UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA HUFF, *et al.*, | ) | CASE NO. 5:12cv2583 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| FIRST ENERGY CORP., *et al.*, | ) | <u>AND ORDER</u> |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiffs Lisa and Reggie Huff filed this action against defendants FirstEnergy Corporation, Ohio Edison Company, FirstEnergy PAC FSL, FirstEnergy General Counsel and Senior Executive Vice-President Leila Vespoli, FirstEnergy President and Chief Executive Officer Anthony J. Alexander, and FirstEnergy PAC FSL Treasurer James F. Pearson (hereinafter referred to collectively as the "FirstEnergy defendants"); as well as Ohio Supreme Court Justices Robert Cupp, Terrence O'Donnell, Judith Ann Lanzinger, Maureen O'Connor, and Evelyn Lundberg-Stratton (hereinafter referred to collectively as the "judicial defendants").

In the complaint, plaintiffs allege civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961- 1968; the Ohio Corrupt Activity Act ("Ohio RICO"), Ohio Rev. Code 2923.31 *et seq.*; and 42 U.S.C. § 1983. Plaintiffs seek monetary relief.

# I.      BACKGROUND

In the complaint, plaintiffs allege the following facts.  In June 2004, plaintiff Lisa Huff was severely injured when she was struck by a falling tree limb in a residential neighborhood in Hartford Township, Ohio. Defendant Ohio Edison possessed a prescriptive easement near the tree which allowed it to control the vegetation near its electrical lines. Defendant FirstEnergy is a holding company and primary shareholder of defendant Ohio Edison. (Doc. No. 1 at 13, 16).

In June 2008, plaintiffs filed a complaint sounding in negligence in the Trumbull County Court of Common Pleas. The complaint asserted claims against FirstEnergy, Ohio Edison, and Asplundh Tree Expert Company, which had been hired by Ohio Edison to inspect trees and vegetation along its power lines in this area.[1] Plaintiffs alleged in their state court complaint (and further allege herein) that the tree at issue was an "open and obvious extreme hazard" and that defendants were negligent in their failure to inspect, maintain, and remove the tree or to warn the landowner and the public of the danger raised by the tree. (Doc. No. 1 at 17).

The state trial court granted summary judgment in favor of FirstEnergy, Ohio Edison, and Asplundh, and plaintiffs appealed. The state appellate court reversed as to Ohio Edison and Asplundh, finding there was a genuine issue of material fact regarding whether plaintiffs had enforceable rights under the contract between those two parties as an intended third-party beneficiary. *See Huff v. FirstEnergy Corp., et al*., No. 2009-T-0080, 2010 WL 1253754 (Ohio App. 11th Dist. March 31, 2010). The appellate court, however, affirmed the trial court's dismissal of FirstEnergy, concluding that it was merely a holding company that owned

---

[1] Plaintiffs also asserted claims against Hartford Township and the owners of the property on which the tree was located, Gerald and Micheline Braho. In the course of the underlying litigation, both Hartford Township and the Brahos were dismissed.

Ohio Edison and that it did not exercise any control or supervision over Ohio Edison's day-to-day practices for clearing vegetation.  *Id*. at * 7.

Ohio Edison and Asplundh appealed.[2]  On August 25, 2010, the Ohio Supreme Court denied jurisdiction to hear the appeal.  *Huff v. FirstEnergy Corp*., 126 Ohio St. 3d 1546 (Aug. 25, 2010). Ohio Edison thereafter filed a timely motion for reconsideration. *See* Docket for *Huff v. FirstEnergy*, Case No. 2010 0857 (Ohio Supreme Court). On October 27, 2010, the Ohio Supreme Court granted Ohio Edison's motion and accepted jurisdiction on all propositions of law raised by Ohio Edison and Asplundh. *Huff v. FirstEnergy Corp*., 126 Ohio St. 3d 1620 (Oct. 27, 2010). A year later, the Ohio Supreme Court issued a decision reversing the state appellate court. *See Huff v. FirstEnergy Corp*., 130 Ohio St. 3d 196 (2011). Specifically, in an opinion written by defendant Lanzinger herein, the court found that the contract between Ohio Edison and Asplundh did not create a duty to the plaintiffs as third-party beneficiaries and that, therefore, the trial court had properly granted summary judgment in their favor as a matter of law.  *Id*. at 200- 02.

In the instant complaint, plaintiffs allege the FirstEnergy defendants improperly circumvented judicial campaign contribution limits through use of an illegal "straw donor scheme" to funnel large campaign cash payments to the judicial defendants for the express purpose of influencing the decision in the underlying negligence action discussed above.  (Doc. No. 1 at 8). Specifically, plaintiffs maintain that defendants Vespoli and Alexander "became aware of [plaintiffs' negligence action] and concerned that the unique facts might be problematic for FirstEnergy and Ohio Edison Company's interests." (Doc. No. 1 at 17). They then "devised a scheme and artifice to thwart the very purpose for the unique contribution limits for judicial

---

[2] Plaintiffs did not appeal the appellate court's ruling that the trial court had properly granted summary judgment in FirstEnergy's favor. *See Huff*, 130 Ohio St. 3d at 198, fn. 1.

candidates," which involved making large cash donations to the judicial defendants in their personal names and that of their spouses that were, in fact, "from and/or for the benefit of . . . [defendant] FirstEnergy PAC FSL." (Doc. No. 1 at 18). Plaintiffs allege this scheme is evidenced by the fact that defendant Vespoli and Alexander's personal contributions are recorded to have occurred within days of FirstEnergy PAC having maxed out its corporate contribution limits. (Doc. No. 1 at 19). Moreover, plaintiffs allege:

> Defendants Vespoli & Alexander and their spouses most commonly all made the exact same contributions to the exact same candidates at the exact same time indicating a coordinated scheme aligned with FIRSTENERGY PAC business interests not personal interests. Plaintiffs allege that this scheme likely involved the designated treasurer, James F. Pearson, of the FIRSTENERGY PAC, who coordinated the so-called personal contributions through the same administrative process as that used by the FIRSTENERGY PAC.

(Doc. No. 1 at 19). Plaintiffs claim this "straw donor scheme" is a "linchpin anchoring the motives and machinations of a true scheme to defraud the public, the State of Ohio, the United States, and the [p]laintiffs of honest services by and through the bribery of public officials, namely a super majority of the Ohio Supreme Court Justices." (Doc. No. 1 at 22).

Plaintiffs maintain that, when the Ohio Supreme Court initially declined review of defendant Ohio Edison's appeal in plaintiffs' underlying civil action, the FirstEnergy defendants "became incensed that all their cash payments had not created a special enough status (acted as a bribe) entitling them to an automatic review by the . . . public officials they put in power even where a mere review was not adequate." (Doc. No. 1 at 25). Plaintiffs assert the FirstEnergy defendants then engaged in *ex parte* contact with some or all of the judicial defendants to ask that "they do them the courtesy of a second look." (Doc. No. 1 at 30). Based on this *ex parte* communication, and as "*quid pro quo*" for the FirstEnergy defendants' illegal campaign

4

contributions, the judicial defendants allegedly reconsidered their decision, accepted defendant Ohio Edison's appeal, and ruled against the plaintiffs in their underlying civil suit.

Plaintiffs filed the instant complaint on October 16, 2012, raising (1) federal civil RICO claims under 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d) (Counts One, Two, and Four); (2) Ohio civil RICO claims under Ohio Rev. Code § 2923.32(A) and (b) (Counts Three and Five); and (3) due process violations under  42 U.S.C. § 1983 (Count Six). Plaintiffs seek monetary relief in the amount of $20,000,000, plus treble damages for their federal and state RICO claims, and punitive damages.

## II.    STANDARD OF REVIEW

The Court notes that plaintiffs paid the $350.00 filing fee in this case and, therefore, the screening provisions set forth in 28 U.S.C. § 1915(e) do not apply. *See Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999). The Sixth Circuit has explained that, "[g]enerally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *See also Tingler v. Marshall*, 716 F.2d 1109, 111-12 (6th Cir. 1983) (requiring a district court to give unambiguous notice of its own motion to dismiss and to notify parties of a reasonable date by which they must respond).

A district court may, however, *sua sponte* dismiss a complaint at any time pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479 (citing *Hagans v. Levin*, 415 U.S. 528, 536-376 (1974)). In other words, a district court may *sua sponte* dismiss a claim under Rule 12(b)(1) where that claim lacks the "legal plausibility necessary to invoke federal subject matter

jurisdiction." *Id.* at 480.  Under these circumstances, a district court need not provide a plaintiff an opportunity to amend his/her complaint. *Id.* at 479.  *See also Tingler*, 716 F.2d at 1111.

The Sixth Circuit has cautioned, however, that *sua sponte* dismissals of claims asserted by plaintiffs who are not proceeding *in forma pauperis* are "appropriate in only the rarest of circumstances where . . . the complaint is deemed totally implausible." *Apple*, 183 F.3d at 480. "Otherwise, a district court must afford the plaintiff the procedural protections of *Tingler* before dismissing the complaint." *Id.* [3]

## III.    ANALYSIS[4]

### A.    Plaintiff Lisa Huff is not a Proper Party

As an initial matter, plaintiff Reggie Huff purports to file this action on behalf of himself and his wife, Lisa Huff.  In general, a party may plead and conduct his or her own case in person or through a licensed attorney.  *See* 28 U.S.C. § 1654.[5] A *pro se* litigant, however, may not represent anyone other than him or herself.  *See e.g. Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer"); *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear *pro se* on his own behalf, he has no authority to appear as an attorney for others than himself"); *Eagle Assoc. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991) (stating that § 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves"); *Cochran v. Nelson*, No. 93-3521, 1994 WL 28648, at *3 (6th Cir. Feb. 1, 1994) ("Because [plaintiff] is not an attorney, he may not represent

---

[3] *Tingler* does not prohibit a *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2) if the plaintiff is proceeding *in forma pauperis. See McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).
[4] Currently pending is the motion of First Energy defendants to dismiss the complaint (Doc. No. 7), and the motion of plaintiffs to amend the complaint (Doc. No. 11). Neither motion is impacted by or, if granted, would impact the Court's ruling today, and both motions will be addressed in a separate opinion.
[5] 28 U.S.C. § 1654 provides as follows: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein."

his son in federal court"). Moreover, an adult litigant who wishes to proceed *pro se* must personally sign the complaint to invoke this court's jurisdiction. *See Steelman v. Thomas*, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988).

The Court notes that plaintiff Reggie Huff, a non-attorney, is claiming authority to represent Lisa Huff in this action by virtue of a grant of power of attorney and "with verbal phone approval." (Doc. No. 1 at 43). Section 1654 clearly makes no provision for a non-attorney's representation of another in federal court. A power of attorney simply is ineffective to permit Reggie Huff to file a *pro se* action on behalf of his wife. *See e.g. J.M. Huber Corp. v. Roberts*, No. 88-6160, 1989 WL 16866, at *1 (6th Cir. Feb. 17, 1989); *Falkner v. Water Grove Investors, LLC*, No. 11-3130-STA-tmp, 2012 WL 259943, at *2 (W.D. Tenn. Jan. 27, 2012); *Doyle v. Schumann*, 1:07CV3684, 2008 WL 397588, at *2 (N.D. Ohio Feb. 11, 2008);.

Because Lisa Huff has not signed the complaint, this Court will consider Reggie Huff to be the sole plaintiff in this action.

## B.    The Judicial Defendants are not Proper Parties

In the complaint, plaintiff names Ohio Supreme Court Justices Cupp, O'Donnell, Lanzinger, O'Connor, and Lundberg-Stratton as "nominal defendants." (Doc. No. 1 at 1). Plaintiff explains the nature of his claims against these judicial defendants as follows:

> 22.  Under certain circumstances state court judges, including Supreme Court Justices, can be sued in Federal Court in their capacity as a judge under the "*ex parte Young*" exception to sovereign immunity. Under the *ex parte Young* exception, relief is limited and focused forward. This case may form a basis for a suit under the *ex parte Young* exception in the future. Otherwise, all of the Justices of the Ohio Supreme Court implicated in this suit have absolute immunity from personal civil liability for any damages, including civil rights violations, arising from the conduct disclosed herein. Federal jurisdiction being restricted therefore none of the implicated Justices can be included as actual parties to this suit. Plaintiffs assert however that said judicial immunity does not extend to federal civil subpoena power.

(Doc. No. 1 at 11-12). Plaintiff later explains, in the section of the complaint entitled "Parties," that the judicial defendants are all "'nominal' defendants do [sic] to their immunity status." (Doc. No. 1 at 16).

As an initial matter, the Court construes the above language as an acknowledgement by plaintiff that the judicial defendants are immune from liability in their individual capacities for monetary damages. Indeed, plaintiff expressly states that the judicial defendants are "absolute[ly] immun[e] from personal civil liability" and, therefore, "none of the implicated Justices can be included as actual parties to this suit." (Doc. No. 1 at 12). Accordingly, insofar as the complaint asserts claims against the judicial defendants for monetary relief in their individual capacities, those claims are *sua sponte* dismissed.

To the extent the complaint states claims against the judicial defendants in their official capacities, the Court finds these claims are also subject to *sua sponte* dismissal. The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). As the judicial defendants are Ohio Supreme Court justices, and thus state employees, any official capacity claims against these defendants are construed against the State of Ohio.

The Eleventh Amendment[1] bars suits brought in federal court against a State and its agencies unless the State has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh

---

[1] The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST. AMEND. XI. The Supreme Court has interpreted this amendment as granting States broad sovereign immunity from federal suits filed by their own citizens as well as citizens of other States. *See Pennshurst State School & Hospital v. Halderman*, 465 U.S. 89, 120-21 (1984).

Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). There are three exceptions to a State's sovereign immunity: (1) when the State has consented to suit; (2) when the exception first set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies; and (3) when Congress has properly abrogated a State's immunity. *See S&M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008); *Kovacevich v. Kent State Univ*., 224 F.3d 806, 817 (6th Cir. 2000).

    In the instant case, plaintiff relies upon the second of these exceptions; i.e. the *Ex parte Young* exception. Specifically, plaintiff explains that he named the judicial defendants as "nominal defendants" because "[t]his case may form a basis for suit under the *ex parte Young* exception in the future." (Doc. No. 1 at 12). Plaintiff does not, however, provide any further explanation as to how, why, or under what circumstances this matter might "form a basis for suit" against the judicial defendants pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

    Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury. *See Will*, 491 U.S. at 71 fn. 10; *S&M Brands*, 527 F.3d at 507; *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) (noting that "[a]n *Ex parte Young* action may be commenced only against a state official acting in her official capacity and may 'seek [only] prospective relief to end a continuing violation of federal law' "). Both the Supreme Court and the Sixth Circuit have made clear that the *Ex parte Young* exception does not extend to retrospective relief; rather, it applies only to prospective injunctive and declaratory relief. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993); *S&M Brands*, 527 F.3d at 507-08. "The

question of whether a complaint contains an *Ex parte Young* action is determined on a claim-by-claim basis." *Whitfield*, 639 F.3d at 257.

Here, the complaint does not meet the requirements of the *Ex parte Young* exception because it does not seek any prospective injunctive or declaratory relief.  Rather, with respect to each of the six claims set forth in the complaint, plaintiff seeks only damages, including compensatory, treble, and punitive damages. (*See* Doc. 1 at ¶¶ 63, 65, 75, 78, 81, 85.) While the complaint does state generally that plaintiff seeks "such other equitable and just relief as the court deems just and proper," it does not specify any particular prospective injunctive or declaratory relief nor is the nature of any such relief otherwise apparent on the face of the complaint.

Because the complaint does not seek any prospective injunctive or declaratory relief, the Court finds the *Ex parte Young* exception does not apply in this case. Accordingly, to the extent plaintiff asserts claims against the judicial defendants in their official capacities, such claims are *sua sponte* dismissed.

IV.     **CONCLUSION**

Accordingly, for the foregoing reasons, the Court finds as follows: plaintiff Lisa Huff is not a proper party to this action; and defendants Cupp, O'Donnell, Lanzinger, O'Connor, and Lundberg-Stratton are *sua sponte* dismissed from this action.

**IT IS SO ORDERED**.

Dated: February 20, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**