UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| REGGIE HUFF, et al., | CASE NO.  5:12cv2583 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | |
| | OPINION AND ORDER |
| FIRSTENERGY CORP., et al., | |
| DEFENDANTS. | |

Before the Court are two of plaintiffs' motions: (1) a motion styled "Motion to Alter Dismissal" (Doc. No. 33), and (2) a motion styled "Combination Motion to Recuse Due to Apparent *Ex Parte* Access and/or Bias & Rule 59(e) to Correct Order[.]" (Doc. No. 36.)  Defendants have responded to both motions. (Doc. No. 37 [response to plaintiffs' motion to alter judgment]; Doc. No. 40 [response to plaintiffs' motion to recuse and/or correct judgment]). Plaintiffs have filed replies. (Doc. No. 39 [reply to motion to alter dismissal]; Doc. No. 41 [reply to motion to recuse].)[1]

I. BACKGROUND

The facts underlying the present litigation were set forth in considerable detail in the Court's September 17, 2013 Memorandum Opinion dismissing the case.

---

[1] The motion to alter judgment was originally filed by plaintiff Reggie Huff. In a non-document order dated October 8, 2013, Court granted the motion of plaintiff Lisa Huff to join the motion. (*See* Doc. No. 34.) The docket reflects that the motion to recuse was also filed by Reggie Huff, alone. The language contained in that document, however, would suggest that it was intended to be filed on behalf of both plaintiffs. Affording a liberal interpretation to this *pro se* filing, the Court will treat it as filed by both plaintiffs, as well.

(Doc. No. 31.) The Court will only provide enough factual and procedural background here to place the present motions in context. Plaintiffs Reggie and Lisa Huff filed this civil RICO action against certain current and former justices of the Ohio Supreme Court, as well various private entities and individuals associated with FirstEnergy Corp.[2] (hereinafter "FirstEnergy defendants"). The complaint raised claims under federal and state law for civil RICO and RICO conspiracy, and a separate claim under 42 U.S.C. § 1983.

Plaintiffs alleged that the FirstEnergy defendants conspired with certain justices of the Ohio Supreme Court to influence litigation involving FirstEnergy defendants. In particular, plaintiffs maintained that the FirstEnergy defendants orchestrated a bribery and straw donor scheme to ensure that Ohio Edison would ultimately prevail in a personal injury action Lisa Huff brought in state court against Ohio Edison and another company.[3]

The Court issued a memorandum opinion dismissing the action for failure to state a claim upon which relief could be granted, and it is this ruling that is the subject of the present motions. With respect to the civil RICO claims, the Court found that they were chiefly held together by stray "innocuous facts mixed with conclusory allegations." (Doc. No. 31 at 489.) In particular, the Court determined that these claims were fatally

---

[2] The FirstEnergy defendants are: FirstEnergy Corp., Ohio Edison Co., FirstEnergy PAC FSL, Leila Vespoli, Anthony Alexander, and James Pearson.
[3] Lisa Huff was injured by a falling tree limb near utility lines owned and maintained by Ohio Edison. According to the complaint, the tree in question was located on property that was covered by an easement owned by Ohio Edison. (Complaint, Doc. No. 1 at ¶ 35.) In addition to Ohio Edison, Lisa Huff sued Asplundh Tree Expert Company, the company hired to inspect and maintain trees and vegetation along Ohio Edison's power lines. The trial court granted summary judgment to the defendants, but the ruling was reversed on appeal. Ultimately, the action came before the Ohio Supreme Court, which reversed the court of appeals and reinstated the trial court's dismissal.

deficient because they failed to set forth the requisite predicate acts, a pattern of racketeering, or the existence of an enterprise. (*Id*. at 485-93.) The Court also determined that plaintiffs lacked standing to bring these claims because Lisa Huff's unliquidated personal injury claim did not constitute a property interest necessary to maintain a civil RICO action. (*Id*. at 494-95.) The Court also denied plaintiffs leave to amend the complaint because such an effort would have been futile as the proposed amendments would not survive a motion to dismiss under Rule 12(b)(6). (*Id*. at 504.)

## II.     PLAINTIFFS' MOTION TO ALTER THE JUDGMENT

By their first motion, plaintiffs seek to alter the Court's ruling granting defendants' motion to dismiss. They identify Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure as the sources for the requested relief.

*Rule 59(e) Standard*

A party may seek to alter or amend a judgment under Rule 59(e) by filing a motion "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion is rarely granted "because it contradicts notions of finality and repose." *Mitchell v. Citizens Bank*, No. 3:10-00569, 2011 WL 247421, at *1 (M.D. Tenn. Jan. 26, 2011). While the rule permits the reconsideration of rulings, it does not permit parties to effectively "re-argue a case." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). Rule 59(e) motions are not "designed to give an unhappy litigant an opportunity to relitigate matters already decided[.]" *Davidson v. Roadway Express, Inc.*, 562 F. Supp. 2d 971, 984 (N.D. Ohio 2008). Instead, the moving party "must either clearly establish a manifest error of law or must present newly discovered evidence."

3

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation and citation omitted).

Although the Sixth Circuit has not precisely defined the term "manifest error" in the context of Rule 59(e) motions, definitions from other courts demonstrate that a high standard applies. The Seventh Circuit defines "manifest error" as the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (also noting that the "[a] 'manifest error' is not demonstrated by the disappointment of the losing party") (internal quotation and citation omitted). In like fashion, the Northern District of Texas cautions courts to possess a "clear conviction of error" before finding the presence of manifest error. *H & A Land Corp. v. City of Kennedale*, *Tex.*, No. 4:02-CV-458-Y, 2005 WL 6803499, at *2 (N.D. Tex. Oct. 24, 2005) (internal quotation and citation omitted).

*Rule 60(b) Standard*

An even higher standard applies to motions under Rule 60(b). Relief may only be granted under this rule for certain specified reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). Like Rule 59(e), Rule 60(b) does not permit parties to

4

relitigate the merits of claims. *See O'Connel v. Miller*, 8 F. App'x 434, 435 (6th Cir. 2001). Its application is also "circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

*Analysis*

According to plaintiffs, they are entitled to relief from the Court's judgment of dismissal because they believe that the Court erred in finding that they lack standing to raise claims for civil RICO. In particular, they complain that the Court misapplied the Ohio Supreme Court's decision of *Groch v. Gen'l Motors Corp.*, 117 Ohio St. 3d 192, 222-23 (2008). The decision in *Groch* was one of many cases the Court relied upon in finding that Lisa Huff's unliquidated personal injury claim did not constitute a property interest for purposes of civil RICO standing. (Doc. No. 31 at 494-95.)

While the Court concludes, on review, that its initial ruling was correct, the Court also finds that had its decision been erroneous, it would not have qualified as a reason for which relief may be granted under Rule 59(e) or Rule 60(b). For the most part, plaintiffs seek to reassert the arguments they raised in opposition to defendants' dispositive motion. To the extent plaintiffs now also look to the Ohio tax code and Ohio statutory law on the accrual of product liability claims for relief (*see* Doc. No. 33-1 at 510), these irrelevant statutes do not change the fact that Ohio law does not treat the opportunity to pursue an unliquidated personal injury claim as a property interest. (*See* Doc. No. 31 at 494-95 [collecting and analyzing case law].) Upon reconsideration, the Court concludes, again, that plaintiffs do not have standing to raise civil RICO.

Of course, the Court's finding that standing was lacking was one of many fatal deficiencies the Court identified in plaintiffs' civil RICO claims. Even if the Court were to determine that its ruling on standing constituted error, which it will not because the ruling was correct, plaintiffs would still not be entitled to relief from the Court's judgment. Each deficiency identified in the Court's memorandum opinion represented an independent and sufficient reason to grant defendants' motion to dismiss the civil RICO claims.

Plaintiffs also attack the Court's refusal to permit them to amend their complaint to add allegations relating to Justice Yvette McGee Brown's recent employment as a partner at Jones Day. Relying upon the same arguments raised previously, plaintiffs persist in arguing that the fact that Justice McGee Brown is now employed by the same law firm that is representing defendants is a "game changing event[]." (Doc. No. 33-1 at 512.)

While a court "should freely give leave when justice so requires[,]" leave need not be given when amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Carson v. United States Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011). Justice McGee Brown was never named as a party defendant, and there are no allegations that she played any role in the alleged RICO conspiracy. The fact that plaintiffs find it significant that their former counsel purportedly exchanged text messages with McGee Brown on her physical appearance and the perceived rudeness of a fellow justice during

6

oral argument does not cure the many deficiencies in plaintiffs' RICO claims.[4] Such an amendment would, therefore, be futile.

Plaintiffs clearly disagree with the Court's ruling on defendants' Rule 12(b)(6) motion, and would like the Court to revisit their initial arguments and reach a contrary conclusion. Because their motion fails to meet any of the requirements under Rule 59(e) or Rule 60(b), however, plaintiffs are not entitled to relief from the Court's judgment. Given that plaintiffs simply view the law in a manner contrary to that of this Court, their proper recourse lies in an appeal to the Sixth Circuit. *Dana Corp v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991). Plaintiffs' motion to alter judgment is DENIED.

### III. PLAINTIFFS' MOTION TO RECUSE

Plaintiffs also request that this Court recuse itself from further participation in this case "due to compelling evidence that [d]efendants acquired special and prejudicial access to this Court that was never disclosed to [p]laintiffs." (Doc. No. 36 at 534.) They suggest that "the Court's most recent ruling . . . gives the appearance that the Court is running interference for the [d]efendants and their counsel." (*Id.*)

*Recusal Under 28 U.S.C. § 455*

Plaintiffs seek recusal under 28 U.S.C. § 455(a), which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any

---

[4] Additionally, the Court is not required to accept as true plaintiffs' conclusion as to the relevance of any particular piece of evidence. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

7

proceeding in which his impartiality might reasonably be questioned."[5] "The law with regard to recusal under section 455 is straightforward and well-established in the Sixth Circuit. A district judge is required to recuse himself 'only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (quoting *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (further quotation omitted)). "This standard is *objective* and is not based 'on the subjective view of a party.'" *Id.* (quoting *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988); *see United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990) (emphasis in original).

Bias requiring recusal must amount to more than a favorable or unfavorable disposition toward an individual. *Fharmacy Records v. Nassar*, 572 F. Supp. 2d 869, 876 (E.D. Mich. 2008). "Therefore, disagreement with a judge's decision or ruling is not a basis for disqualification." *Id.*; *see Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) ("the recusal statute was never intended to enable a discontented litigant to oust a judge because of adverse rulings made") (internal quotation and citation omitted); *Cheese v. United States*, 290 F. App'x 827, 830 (6th Cir. 2008).

"Although a judge is obliged to disqualify himself when there is a close question concerning his impartiality, *United States v. Dandy*, 998 F.2d 1344, 1349 (6th

---

[5] Litigants may also move for the recusal of a judicial officer under 28 U.S.C. § 144. "Section 144 relates only to charges of actual bias[,]" *Henderson v. Dep't of Public Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990), and makes recusal mandatory once a party submits a timely, sufficient affidavit and counsel certifies that the affidavit is made in good faith. *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007). Plaintiffs have not filed an affidavit or certificate, as required under § 144, and make clear in their reply that they are proceeding under § 455. (Doc. No. 41 at 634.)

Cir. 1993), he has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (citing *Laird v. Tatum*, 409 U.S. 824, 837, 93 S. Ct. 7, 34 L. Ed. 2d 50 (1972) (Rehnquist, J., concurring) (collecting cases)). In making a determination as to bias, "a court must remember that where the standards governing disqualification have not been met, disqualification is not optional; rather it is prohibited." *Fharmacy Records*, 572 F. Supp. 2d at 876) (internal quotation and citation omitted).

*Analysis*

In support of their motion, plaintiffs cite the fact that the Court placed on the docket a copy of a facsimile plaintiffs sent to chambers. Prior to filing the present motion to recuse, plaintiff Reggie Huff caused a draft of the motion to be sent via facsimile to the Court. The draft did not contain a certificate of service, but the fax cover sheet did indicate that a copy would be sent to opposing counsel. In an order, dated October 9, 2013, the Court explained that "[b]ecause the document contains an ex parte communication from a party, the Court directs the Clerk to file the document on the docket so that it is accessible to counsel and the parties in this case." (Doc. No. 35 at 517.) Plaintiffs suggest that the Court's actions constitute evidence of bias because the Court unjustly accused Reggie Huff of attempting to engage in an ex parte communication, and that the Court's order was nothing more than a "vindictive reaction to facts and information disclosed" in the draft. (Doc. No. 36 at 535.)

Such action cannot support a finding of bias. The performance of a court's judicial duties, even if viewed as incorrect by a litigant, cannot support a basis for concluding that a court could not be impartial in handling a case. *See Gerber v. Riordan*,

9

Case No. 3:06-CV-1525, 2012 WL 366543, at *8 (N.D. Ohio Jan. 31, 2012) (citing *Reed v. Rhodes*, 179 F.3d 453, 468 (6th Cir. 1999)); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966) (the alleged bias must emanate from an extrajudicial source); *United States v. Beneke*, 449 F.2d 1259, 1260-61 (8th Cir. 1971) (same).

It is unusual for a litigant to send a draft of a motion to chambers. In an abundance of caution, and to avoid even the appearance of impropriety that might be perceived from this unorthodox attempt to contact the Court, the undersigned made the document available to all parties and counsel. Reggie Huff was not admonished or sanctioned for sending the document, and no further action was taken on the draft.[6] The Court takes its ethical responsibilities seriously, and, as its order suggested, put the draft on the docket so that it would be accessible to all parties and counsel. *See, e.g., Jackim v. City of Brooklyn*, No. 1:05CV1678, 2006 WL 2899935, at *1 (N.D. Ohio Oct. 2006) (placing *ex parte* communication from counsel on the docket "so that it will be available to the defendants via the Court's electronic docket system"). No bias can stem from the Court's exercise of its judicial duties, and no reasonable person would find this conduct

---

[6] Plaintiffs make much of the fact that the draft bore the words "[t]his is not ex parte" across the top of the first page. In a prior action brought by Reggie Huff in this Court, Reggie Huff sent a facsimile to the Court bearing similar language. In that case, the Court advised the parties and counsel of the filing and informed them that the Court would make the document available to any party or counsel that did not receive a copy. Both opposing counsel and plaintiff's own attorney advised the Court that they had not received a copy of the document. *See Enginetec vs. Boutin*, 4:09-cv-568 (N.D. Ohio 2009) [Minute Entry from August 27, 2009 and Doc. No. 46].)

to be evidence of partiality.[7]

Nonetheless, plaintiffs posit that this conduct, along with other court actions, demonstrates defendants have improper *ex parte* access to the Court. According to plaintiffs, the Court's ruling granting defendants' motion to dismiss was filed six days after one of the defendants, FirstEnergy PAC, filed a public disclosure with the Office of the Ohio Secretary of State. (Doc. No. 36 at 536-37.) In a rambling and incoherent fashion, Plaintiffs suggest that FirstEnergy PAC would not have made such a filing unless it knew that the Court was planning to rule in the near future on its pending motion. (*Id*. at 537.)

Unfortunately, it has been a pattern with plaintiffs that they take innocuous facts and draw sinister conclusion from them. There is absolutely no connection between a reporting to a state agency and a federal court ruling, and it is simply not sufficient for plaintiffs to conjure one from thin air. Nor can plaintiffs gain mileage from their belief that the Court applied a different standard in an unrelated criminal action before it. Plaintiffs' views of the Court's administration of other cases on its docket can no more support a finding of bias than their views about the Court's management of and rulings in *this* case.

---

[7] Plaintiffs also seek, pursuant to Rule 59(e), to have the Court alter or amend its October 9, 2013 order directing the Clerk to place plaintiffs' draft motion on the docket. Rule 59(e), however, only applies to judgments, and the Court's October 9, 2013 does not qualify as a judgment. *See, e.g., Jester v. United States*, 714 F.2d 97, 99 (11th Cir. 1983) (holding that an "order" detailing an *ex parte* communication was "not an appealable order," but was "[a]t most . . . an effort by the district court to memorialize an *ex parte* discussion with [defendant's] attorney"). At the risk of stating the obvious, the order in question meets none of the prerequisites for relief under Rule 59(e).

Plaintiffs also highlight other judicial actions taken by this Court during the case, including the ruling involving Justice McGee Brown's employment with Jones Day, the Court's decision to take judicial notice of the ruling in the state court in Lisa Huff's personal injury action, and the Court's interpretation of the pleading requirements contained in Rule 8 and 9(b) of the Federal Rules of Civil Procedure. Again, the Court's performance of its judicial duties cannot support a finding of bias or prejudice.

It is clear from the general tenor of plaintiffs' post-dismissal motions that they are dissatisfied with the Court's disposition of the present case. In an adversary system, it is to be expected that one side (and sometimes both sides) may be unhappy with the outcome of litigation. This unhappiness, alone, does not entitle plaintiffs to presume, without any rational support, that the disposition was the result of fraud. *See Fharmacy Records*, 572 F. Supp. 2d at 876 (a party's dissatisfaction with a ruling does not give it "cause for a baseless attack upon the impartiality of the decision maker"). "Judicial impartiality and independence are serious matters." *Fharmacy Records*, 572 F. Supp. 2d at 876 (*citing United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007)). "However, [plaintiffs] have trivialized these attributes" by equating bias with unfavorable rulings. *Fharmacy Records*, 572 F. Supp. 2d at 876. Because no reasonable person with knowledge of all of the facts would conclude that the Court's impartiality might *reasonably* be questioned, the Court is compelled to DENY plaintiffs' motion to recuse.

### IV. DECORUM IN FEDERAL COURT

This leads the Court to make some final comments. The Court is disturbed by the abusive language and tone directed toward the Court and defendants' counsel in plaintiffs' filings in this case. While a *pro se* plaintiff is generally not held to standards as

high as those applied to licensed attorneys, the latitude afforded even to *pro se* litigants has its limits. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Plaintiffs are cautioned that their *pro se* status does not entitle them to exhibit impudence and disrespect toward the Court or opposing counsel. Unnecessary ad hominem attacks have no place in a proper court filing. Further abuses may result in sanctions.

### V. CONCLUSION

For all of the foregoing reasons, plaintiffs' motions to alter judgment and recuse are DENIED.

**IT IS SO ORDERED**.

Dated: May 29, 2014

                                           **HONORABLE SARA LIOI**
                                           **UNITED STATES DISTRICT JUDGE**